[No. 11520.   Department Two.   May 12, 1914.]

A. J. BALDWIN, *Respondent*, v. FIRST METHODIST EPISCOPAL
CHURCH OF OPPORTUNITY, WASHINGTON, *Appellant*.[1]

RELIGIOUS SOCIETIES—MINISTERS—SALARY—CONTRACTS—CONSTRUC-
TION.   A church corporation is not liable for a minister's salary,
where no definite amount was to be paid him in any event, and it was
understood that his salary was contingent upon voluntary sub-
scriptions, which were only estimated, and were not collected, and
the rules of the society, with which he was furnished a copy, pro-
vided that neither the trustees nor congregation had any voice in
selecting a pastor or any power to make any contract with refer-
ence thereto binding upon the church.

Appeal from a judgment of the superior court for Spokane
county, Grady, J., entered June 9, 1913, upon findings in
favor of the plaintiff, in an action on contract, tried to the
court.   Reversed.

*Nuzum, Clark & Nuzum* and *Geo. H. Armitage*, for appel-
lant.

*Belden & Losey*, for respondent.

MOUNT, J.—This action was brought by the plaintiff to
recover a balance alleged to be due upon a contract for serv-
ices as pastor of the defendant church.

The complaint alleges, in substance, that, on or about
September 1, 1910, the defendant entered into a contract
with the plaintiff to pay the plaintiff the sum of $500 for his
services as pastor of the defendant church during the year
1910 and 1911; that the defendant has paid thereon $410,
leaving an unpaid balance of $90.   For a second cause of
action, the complaint alleges that, on or about September
1, 1911, another contract to the same effect was entered into,
by which the defendant agreed to pay to the plaintiff the
sum of $600 for his services as pastor of the defendant church
during the year 1911 and 1912; that the defendant has paid

[1]Reported in 140 Pac. 673.

thereon the sum of $300, leaving an unpaid balance of $300. The plaintiff prays for judgment for the sum of $390.

The defendant answered the complaint and denied that any contract had been entered into, admitted the payments alleged in the complaint, and pleaded three affirmative defenses. A demurrer was sustained to the first two separate defenses. The third was to the effect that the defendant church was a denomination known as the Methodist Episcopal Church, and was controlled by the laws, rules and regulations of such churches; that such churches and its boards and ministers are controlled by what is known as the "Discipline of the Methodist Episcopal Church," which "Discipline" provides that the property of the church shall not be held for the current expenses of the church. Section 316 of the "Discipline" provides as follows:

"Should the people among whom a member of an annual conference has labored fail to pay him his allowance, he may present a claim for the same to the conference, and the conference may authorize the conference stewards to pay a part or all of said claim out of funds at its disposal for such purpose, and shall include in its report the name of the pastoral charge with the amount paid. In no case, however, shall the church or the conference be held accountable for a final deficiency."

It is alleged that this "Discipline" was binding upon the plaintiff, who had notice and knowledge of it, and accepted his pastorate after such knowledge. This affirmative defense was denied by a reply. Upon these issues, the cause was tried to the court without a jury. Findings were made in favor of the plaintiff, and judgment entered for $390 against the defendant. This appeal followed.

The plaintiff testified, in substance, that he had a contract with the officers of the church at Opportunity, Washington, as alleged in his complaint; that he had been paid the amounts therein stated, and that there was still due him $390.

It appears from the record that the defendant is a corpora-

tion, incorporated under the laws of this state. The articles of incorporation recite that the object of the corporation is:

"For the establishment and maintenance of religious worship of God, at or near Opportunity, Washington, according to the usages of the Methodist Episcopal Churches of the United States of America, . . ."

It also appears that the Methodist Episcopal denomination is a sect which carries on its religious work through what are called conferences, the chief authority of which is lodged in bishops. The conferences are comprised in territorial limits and are subdivided into districts, one of which is known as the Coeur d'Alene district of the Columbia river conference of the M. E. church of the United States of America, under the jurisdiction of which is the Opportunity M. E. church, the defendant herein. This church is governed by a system of laws which is known as the "Discipline." According to this "Discipline," the pastors are appointed and assigned to churches by the bishop of the conference, or in his absence, by the district superintendent. Neither the trustees of the churches nor their congregations, acting separately or together, have any authority or voice in choosing the pastor, or making any contract with reference thereto, binding upon the church. Under the conference organization, there is in each local church a body called the "official board," composed of the pastor and other church members, whose duty it is to hold congregational conference meetings, and to devise means for the support of the religious work and to report concerning the work to the conference authorities. This board solicits voluntary subscriptions for the support of the minister and the expense of the church. The members of the board estimate what they can raise for the pastor. And it is from this source, and also from a sum allotted, in some instances, by the home missionary society connected with the church, that the pastor is supported.

In the year 1910, the regular pastor of the church at Opportunity requested the plaintiff to supply his place for

the balance of his term, which was about three months.  The plaintiff did so and was paid therefor.  He testified that he did not remember how or in what amount he was paid.  In September, 1910, the plaintiff was requested by the congregation and by the district superintendent to continue his pastorate for another year.  The official board reported they could raise for his salary the sum of $500.  He continued his pastorate for that year and was paid the sum of $410, leaving a balance of $90.  He was again appointed for the next year and the official board reported that they could raise for his salary the sum of $600, including the sum of $130 from the home missionary society.  During the latter year, he was paid but $300.  Some contention arose among the members of the church which resulted in the plaintiff withdrawing from the church and taking nearly all of the members with him into a church of his own, thereby making it impossible for the defendant church to collect the subscriptions necessary to pay the balance of his salary.

The principal question in the case, as we view it, is, whether or not there was an agreement to pay at all events a specific salary.  It is apparent that there was not.  It is claimed by the respondent that, at the time he first took charge of the church as its pastor, he was a congregational minister, and was unacquainted with the "Discipline" of the Methodist Episcopal Church; that he was never under the control of the church organization, and was not governed by its "Discipline."  The record, we think, plainly shows, that he withdrew from his Congregational connection and became a member of the Methodist Church at Opportunity during his first year; or at any rate, before the biginning of his last year. He testified that he did not know, and was not acquainted with the "Discipline."  He admitted, however, that he had possession of a copy of the "Discipline" for a period of about two weeks, but stated that he did not read it with reference to his duties.  Whether he did or did not, we think is of no special importance.  He was fully acquainted with the method by

which the pastor's remuneration was acquired without having actually read the "Discipline." He knew, of course, that the pastor's salary was raised by voluntary subscriptions among the members and friends of the church, aside from $130 from the Home Missionary Society. He knew that the church had not sources from which to acquire funds except from these two sources, namely, by voluntary contributions of its members and friends, and by a stipulated amount from the Home Missionary Society. He knew that the official board merely estimated the receipts from such contributions. And when he was called as pastor of the church at both the first and second meetings of this board when his alleged contracts were made, he knew all these facts and necessarily contracted, if a contract were made, with reference to them. In answer to a question as to the substance of the contract, he said:

"This contract? The authorities met, held a conference, decided what they could raise, offered me that amount if I would supply the church for a year on that basis."

This is as near as he states the terms of the contract. We think it is apparent that he understood that no definite amount was to be paid to him in any event, but it was understood by him, and by the congregation, that his salary was contingent upon these voluntary subscriptions; that, if the voluntary subscriptions were paid, he would be paid also; that, if these subscriptions were not paid, there would be no money with which to pay his salary. We are satisfied from the whole record that this does not constitute a contract for a definite amount to be paid in any event, and made a lien against the property of the church, but is a contract only for $500, or $600, as the case was, provided that amount of money were collected. It is not shown that the money was collected. On the other hand, it is definitely shown that the money was not collected; and one of the reasons therefor, no doubt, was that the church was divided against itself, and the plaintiff organized from the old members another church, and, therefore, made it impossible for the defendant church to collect the

voluntary subscriptions. We are satisfied that there was no such contract as would authorize the plaintiff to maintain an action for a specified amount, unless it may be for the amount actually collected and not paid to him.

The respondent relied in the court below, and in this court relies, upon the case of *Jones v. Trustees of the Congregation of Mt. Zion*, 30 La. Ann. 711. That was a case in many respects like this. But in that case the evidence showed, or at any rate the court assumed, that a contract was made for a definite amount, and judgment therefor was entered in favor of the pastor. But in this case, as we have seen, if there was a contract for a definite amount, it was contingent upon voluntary subscriptions which were never paid. We are satisfied, therefore, that the court erred in entering judgment in favor of the plaintiff.

The cause is reversed and ordered dismissed.

CROW, C. J., FULLERTON, PARKER, and MORRIS, JJ., concur.